Robert Hardy Jackson

*v.*

John J. Kemp, Individually, and as Agent for the American Surety Company and the American Surety Company of New York.

365 S. W. 2d 437.

(*Nashville,* December Term, 1962.)

Opinion filed February 7, 1963.

W. R. FAIN, FRANK J. RUNYON, Clarksville, for plaintiff in error.

W. M. DANIEL, JR., of DANIEL, HARVIL & BATSON, Clarksville, MILLER MANIER, of MANIER, CROUCH, WHITE, & HERD, Nashville, for defendants in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiff in error, Jackson, sued the defendants for hospital and doctor's bills for personal injuries that he

received by reason of being struck by an automobile on the night of April 2, 1960, as he started across a highway just south of the city limits of Guthrie, Kentucky. As a result of this accident the plaintiff was hospitalized and his hospital and doctor's bills exceed $3,000.00. He was seriously injured. Shortly after this accident while plaintiff in error was in the hospital Kemp, an adjuster and claims manager for the surety company, advised plaintiff's brother and wife that "if plaintiff would not employ an attorney to represent, but would deal directly with the aforesaid defendant John J. Kemp and would not file suit on the claim, that he, as claims manager, would authorize and direct his company on behalf of the defendant Frank G. McGinnis III to pay the plaintiff's hospital bills, medical bills and as soon as extent of his injuries were determined would pay plaintiff for his injuries. This information was transmitted to plaintiff, was accepted by him and the defendant aforesaid John J. Kemp notified thereof."

Subsequent to that time, after the hospital had sent their bills for Jackson's hospitalization to Kemp, Kemp acknowledged these bills by letter and said: "We wish to inform you this claim has not been settled as yet. When it is settled we will take into consideration your bill for hospital services." Subsequent thereto, and after one year's statute of limitations had run, Jackson learned that Kemp had informed the hospital that they would not make any settlement because "Mr. Jackson has permitted the Statute of Limitations to have run on any claim he may have had without making claim for his injuries."

This suit is filed on the theory of a breach of contract under the language above quoted from the declaration. It is said because Jackson is an ignorant man and he lived

up to his promises and did not employ an attorney and did not take any action that this agreement contituted a forbearance and thus it was a sufficient consideration and the present suit is brought not on the tort theory wherein the statute is one year but on the contract theory wherein the statute for breach of a contract is six years. To this declaration the defendants in error filed a demurrer in three counts, two of which were sustained by the trial judge and the action dismissed. The first of these grounds of the demurrer was to the effect that the action was basically a tort action which occurred more than one year before the suit was brought and consequently was barred by the statute of limitations, sec. 28-304, T.C.A.

The second count, which was sustained, is that: "The declaration shows on its face that the subject matter of the alleged contract is so indefinite and uncertain as to be unenforceable."

■■■ A careful reading and re-reading of this declaration convinces us that it is an action in contract and not one in tort. This being true it would be up to the jury to determine whether or not the proof sustains the allegations in the declaration as to this promise of forbearance and as to whether or not there was a contract between the parties. A suspension of the statute of limitations for the forbearance to sue by Jackson prevents the statute of limitations from running against him, and at the same time it gives the defendants a period for performance. If the jury believes that this contract was entered into it extends the life of the action. Of course, when such an extension has been made or a promise given which is accepted and relied upon, this is not a waiver of any defense that would otherwise be permitted in a tort

action if the same had been brought as such. "A promise not to plead the statute, made before the remedy is barred, may be given in exchange for the creditor's forbearance to bring suit. Actual forbearance or a promise to forbear, so given, is a sufficient consideration for the debtor's promise." Corbin on Contracts, Vol. I, sec. 218.

The same author says in sec. 221, same volume, that: "If, before the action for a tort is barred, the party charged with the tort makes a promise to pay, or not to plead the statute in defense, as to lull the claimant into security and cause him to forbear suit until the statutory period has expired, these facts may operate as an estoppel to plead the statute. Such action in reliance on the promise may make it enforceable as a contract, the action in reliance having the same effect as a consideration." In cases cited under this last quotation will be found among others the one of *Louisville & N. R. Co. v. Carter,* 226 Ky. 561, 10 S.W.2d 1064. The Kentucky court had before it a very similar claim to that herein. The Kentucky court said:

"On this idea, appellee, in answer to the appellant's plea of limitations, replied that the appellant had through the F. & C. promised him first after his accident that, if he would not immediately sue, it would pay his hospital and doctor's bills, keep him on the payroll, and would later on settle his claim; that it continued to make such promises from time to time and up to when the F. & C. went into the hands of the receiver, and that appellee, in reliance on these promises, had not brought suit. This estoppel pleaded by the appellee, if sustained by the proof, was a complete answer to the plea of limitations."

■ Of course, it is a well recognized legal principle that the statute of limitations is for the benefit of individuals, and not to secure general objects of policy; hence a statute of limitations may be waived by express contract or by necessary implications, or its benefits may be lost by conduct invoking the established principles of estoppel *in pais*. Such was applied by this Court in a Workmen's Compensation case, *Hartford Accident & Indemnity Co. v. Hay,* 159 Tenn. 202, 17 S.W.2d 904.

The plaintiff in error relies primarily on our case of *Williams v. McElhaney,* 203 Tenn. 602, 314 S.W.2d 106. This case has met general approval at the bar and its conclusions are commented on with favor in an article by the Hon. Paul J. Hartman, Professor of Law, Vanderbilt University, in 12 Vanderbilt Law Review, beginning at page 1113. The discussion there on the points presented in this case are exceptionally well outlined. The Williams case differs only from the instant case in that it was a chancery lawsuit wherein Williams had recovered a judgment in a tort action against a fellow servant who had negligently operated a truck owned by McElhaney and McElhaney had induced this action and promised that if the fellow servant did not pay the damages that he, McElhaney, would. In other words, that suit likewise was brought on a contract of forbearance. In other words, Williams forbore to sue McElhaney for reasons stated in the opinion and that are well discussed in the Vanderbilt Law Review article, above referred to.

This Williams suit is authority for the form of action in the instant case. The distinguishing features are the fact that a judgment had already been rendered in a tort case and the damages were liquidated which really does not affect the action as here brought. The only necessity

in referring to the liquidated damages in the Williams case was the fact that it was a chancery lawsuit and those were part of the facts to prove the forbearance of Williams in his action on this contract against McElhaney. If that action had been brought in the circuit court, as this one is, it wouldn't have been necessary to state that the damages were there liquidated. The mere fact that the damages were liquidated does not affect the action. This is merely a matter of form and not of substance.

In sec. 90 of American Law Institute's Restatement of the Law of Contracts, the writers of this very learned treatise of law have come up with a definite rule of law on such a proposition, as we have here, which is:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action of forbearance is binding if injustice can be avoided only by enforcement of the promise."

Some such rule is necessary in our society and it does not seem to us that the cases over the years are inconsistent with such a rule. A great many cases which adopted this rule and which is approved by Corbin, supra, sec. 206 of Volume I, and his very learned discussion thereon, make interesting reading on the problems here confronting us.

█ The second ground of the demurrer of indefiniteness and the argument thereon is largely on the proposition that there was no amount agreed upon as to what should be paid to Jackson for his injuries, and the hospital and doctor's bills and things of that kind were uncertain. This, as said above, is a suit on a contract,

that is a contract to pay these things, and these things were in the contemplation of the parties and damages suffered thereby may be fairly said to be within the contemplation of the parties when this agreement or contract was entered into. Thus it is that even though this suit is based on this contract in establishing what these damages were there seems to be no good reason to us for applying any different rule in establishing them than would be in an action if based on the tort.

As said heretofore, the same defenses are now allowed as would have been had the suit been brought within the one year period. Actions for breach of promise of marriage, of course, are *sui generis,* but such actions are actions for breach of contract and they have much in common with tort actions. The same would be true in an action on a contract to build a house or any other thing of the kind, such as an action against the telegraph company. Its action is a breach of contract to perform its contractual duty, such as *Western Union Telegraph Co. v. Hogue,* 79 Ark. 33, 94 S.W. 924, and our telegraph cases, such as *Gray v. Western Union,* 108 Tenn. 39, 64 S.W. 1063, 56 L.R.A. 301; *Wadsworth v. Western Union,* 86 Tenn. 695, 8 S.W. 574; and *Western Union v. McCaul,* 115 Tenn. 99, 90 S.W. 856. Of course, it is argued here that in our cases this was a breach of statutory duty, but it makes no difference how the suit was brought in either case because the cause of action is really dependent upon the contract of sending. There are other cases cited pro and con herein, but we are convinced that the action here is maintainable.

This form of action, as said heretofore, really in effect is an estoppel. One of the best reasoned cases on this subject applying a similar state of facts to that herein

was *Scarborough v. Atlantic Coast Line,* 178 F.2d 253, 15 A.L.R.2d 491, petition for certiorari denied by the Supreme Court of the United States, 1950, 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343. In this case the court held that it constituted fraud for the railroad company to promise if Scarborough didn't bring suit until after he became 21 years of age that the railroad company would pay his claim as soon as he reached 21. This court quotes from a New Jersey Court a very pertinent statement, to-wit: "One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought." Then that court speaking through Judge Dobie said this concerning this type of fraud: "Fraud, however, as in the instant case, may be equally as effective in preventing one from seasonably suing on his claim; and, if permitted to succeed, it affords a continuous temptation thus to defeat the primary purposes for which Congress passed the Act." This case has been recently followed by the Court of Appeals in the case of *Breneman v. Cincinnati, N. O. & T. P. Ry. Co.,* in an excellent opinion by Presiding Judge McAmis, which was handed down on January 6, 1961, and found in 48 Tenn.App. 290, 346 S.W.2d 273. The principles applied in the Breneman and Scarborough cases certainly are applicable to the allegations in the declaration in this case which were demurred to, and, of course, such a demurrer admitted *pro hac vice* the allegations of the declaration.

For a very recent well reasoned opinion as to what constitutes a contract and consideration therefor see an opinion written by Mr. Justice White for the Court of *John-*

son v. *Central National Ins. Co. of Omaha,* 210 Tenn. 24, 356 S.W.2d, beginning at page 277. In that opinion the case of *Palmer v. Dehn,* 29 Tenn.App. 597, 198 S.W.2d 827, is cited and quoted from at length. In this Court of Appeals' opinion the writ was denied by this Court a number of years ago and since that time this opinion has been frequently quoted. In the *Palmer v. Dehn* opinion there was an action both on a contract and a tort and they were tried together and approved. The contract part of it was that Palmer told Dehn, "I am awfully sorry this happened but don't worry a minute. I will see you are compensated for the loss of your finger, take care of your expenses for the loss of your finger, and all." This case and the manner in which it was tried can very easily be coordinated with the factual situation in the present case.

The defendants have cited a number of cases in support of their proposition. We have read all of these cases and are satisfied that under the pleadings and facts of the instant case all of these cases are very easily distinguished. The case of *Bodne v. Austin,* 156 Tenn. 353, 2 S.W.2d 100, 62 A.L.R. 1410, and cases following it are the principal cases on which the defense is bottomed that this is a tort action and not a contract action. Under the pleadings and facts of the instant case it is easily, and to our mind clearly, distinguishable from those cases.

After studying the matter, reading the authorities and making an investigation, we are satisfied that the trial court is wrong and the judgment must be reversed and the case remanded to the trial court for further disposition pursuant to this opinion.