CHARLES W. BERNARD and wife,       )
KAREN BERNARD,                     )
                                   )        **Williamson Chancery**
        **Plaintiffs/Appellants,**    )        **No. 22425**
                                   )
VS.                                )
                                   )        **Appeal No.**
HOUSTON EZELL CORPORATION, THE     )        **01A01-9701-CH-00015**
CITY OF BRENTWOOD, TENNESSEE and   )
LAND INVESTMENT CORPORATION,       )
                                   )
        **Defendants/Appellees,**     )
                                   )

**FILED**

**October 10, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE WILLIAMSON COUNTY CHANCERY COURT
AT FRANKLIN, TENNESSEE

HONORABLE CORNELIA A. CLARK, JUDGE

William Kennerly Burger
301 N. Spring Street, P.O. Box 398
Murfreesboro, TN 37133-0398
ATTORNEY FOR DEFENDANTS/APPELLANTS

David J. White, Jr.
WHITE & REASOR
3305 West End Avenue
Nashville, TN 37203
ATTORNEY FOR PLAINTIFFS/APPELLEE, HOUSTON EZELL CORPORATION

Van French, BPR #6922
The City of Brentwood
8307 Bridle Place
Brentwood, TN 37027
ATTORNEY FOR DEFENDANT/APPELLEE

**AFFIRMED AND REMANDED**

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:

BEN H. CANTRELL, JUDGE
WILLIAM B. CAIN, SPECIAL JUDGE

CHARLES W. BERNARD and wife,    )
KAREN BERNARD,    )
    )    **Williamson Chancery**
    Plaintiffs/Appellants,    )    **No. 22425**
    )
VS.    )
    )    **Appeal No.**
HOUSTON EZELL CORPORATION, THE    )    **01A01-9701-CH-00015**
CITY OF BRENTWOOD, TENNESSEE and    )
LAND INVESTMENT CORPORATION,    )
    )
    Defendants/Appellees,    )
    )

# O P I N I O N

This suit arose out of alleged defects in the planning of a subdivision lot and defects in the lot on which a house was built and sold to plaintiffs.

The suit against The City of Brentwood was dismissed upon a motion to dismiss or for summary judgment. The suit against Houston Ezell Corporation, the developer of the subdivision, was dismissed by the Trial Judge after a hearing upon the merits. The manner of disposition of the remaining defendant, Land Investment Corporation, will be detailed hereafter.

## PLEADINGS

The complaint alleged in part:

> 2.    The Defendant HOUSTON EZELL CORPORATION is a corporation chartered under the laws of the State of Tennessee and doing business within Williamson County, Tennessee. Defendant HOUSTON EZELL CORPORATION is the developer of the above-described Brentmeade Estates Subdivision, which includes Lot No. 156, of Section II, Revision Number 1, of that subdivision. Plaintiffs allege and aver that the said HOUSTON EZELL CORPORATION, directly or through their agents, prepared information required by both state and local development statutes and ordinances, necessary for the submission and approval of the above-described Brentmeade Estates Subdivision by the local planning authority, specifically the Brentwood Planning Commission.

5. Included among the mandatory subdivision regulations applicable to the above-described tract of land is § 506 of the Brentwood Subdivision regulations, which provides as follows:

"Suitability of the land. The Planning Commission shall not approve the subdivision of land if, from adequate investigations conducted by all public agencies concerned, it has been determined that in the best interest of the public the site is not suitable for platting and development purposes of the kind proposed.

Land subject to flooding and land deemed to be topographically unsuitable shall not be platted for residential occupancy, or for any other uses which may increase flood hazard, endanger health, life or property, or aggravate erosion. Such land within the plat shall be set aside for such uses as shall not be endangered by periodic or occasional inundation or shall not produce satisfactory living conditions.

- - - -

5. Further §602.3 of the Brentwood Subdivision Regulations outlines minimal requirements for proper lot drainage within the subdivision proposed for development.

- - - -

7. The Defendant, LAND INVESTMENT CORPORATION, is the grantor of the real estate property. The real estate was constructed by contractor T. J. Neumann and Associates, although the true grantor in interest is Defendant LAND INVESTMENT CORPORATION.

- - - -

9. Plaintiffs CHARLES W. BERNARD and wife, KAREN BERNARD allege and aver that, commencing almost immediately upon their occupancy of the property, they became aware of an unusual water accumulation problem beneath the residence constructed upon Lot 156, manifested periodically by the accumulation of as much as two to three feet of water beneath the house, often inundating the central heat and air conduits and soaking the floor joists and other areas beneath the residence. Plaintiffs allege and aver that, upon complaining of the propensity of the lot to frequently flood beneath the residence, efforts were immediately commenced by the developer HOUSTON EZELL CORPORATION and the grantor, LAND INVESTMENT CORPORATION, to correct the problem. Plaintiffs allege that those corrective efforts, although providing some temporary, mitigating relief, failed to provide a permanent, adequate remedy. Extensive excavation around and beneath the residence occurred in 1990 as the Defendants HOUSTON EZELL CORPORATION and LAND INVESTMENT CORPORATION understood more dramatic efforts to solve the water accumulation problems. Those extensive efforts in 1990 provided some abatement to the problem, although the relief was temporary in nature, and proved ultimately to be unsatisfactory.

- - - -

-3-

12. Plaintiffs allege and aver that they are entitled to the remedy of recision as to the grantor, LAND INVESTMENT CORPORATION, which is a company related to the parent company, HOUSTON EZELL CORPORATION.

- - - -

14. Plaintiffs allege and aver that, due to the statutory obligation of the CITY OF BRENTWOOD, TENNESSEE to properly review, inspect, and approve land proposed for subdivision development, the CITY OF BRENTWOOD, TENNESSEE is legally responsible, both upon legal theories of permanent nuisance and tort, due to the improper supervision of the development of Lot 156.

- - - -

BASED UPON THE FOREGOING ALLEGATIONS, PLAINTIFFS SEEK THE FOLLOWING RELIEF:

A. A finding by the Court that the above described condition constitutes a permanent nuisance, which cannot be abated or minimized by expenditures of additional sums or additional corrective work.

B. That, in the alternative, a mutual mistake of fact or negligent misrepresentation existed at the time of the sale of the property to the Plaintiffs and that, accordingly, Plaintiffs should be granted recision of the transaction, together with incidental and consequential damages appropriately shown.

C. A finding that the CITY OF BRENTWOOD, TENNESSEE is jointly and severally liable due to its failure to follow the requirements which the CITY itself promulgated for proper review of potential drainage problems in proposed subdivision development.

D. The joint and several liability for the damages shown by the Plaintiffs against the Defendant HOUSTON EZELL CORPORATION, developer of Brentmeade Estates Subdivision.

E. For such further and general relief to which Plaintiffs may be entitled, including all incidental and consequential damages, attorney's fees, and court costs.

F. A finding that the conduct of the developer constitutes a violation of the Tennessee Consumer Protection Statute, specifically Tennessee Code Annotated, § 47-18-101 et seq, entitling the Plaintiffs to an assessment of attorney's fees and, if intentional misconduct is shown, an award of treble damages against the developer and grantor.

The City moved to dismiss for failure to state a claim for which relief can be granted and subsequently moved for summary judgment.

-4-

The Trial Judge overruled the motion of the City to dismiss and sustained the motion of the City for summary judgment.

The defendant-developer filed an answer including the following:

> 7. The Defendant admits that Land Investment and Development Corporation, the predecessor of Houston Ezell Corporation, transferred and conveyed the property described in paragraph 1 of the Complaint to T. J. Neumann and Associates, Inc. constructed a residence on the property; and that T. J. Neumann and Associates, Inc. transferred and conveyed the property to the Plaintiffs.
>
> - - - -
>
> 1. The Complaint fails to state a claim against the Defendant upon which relief can be granted.
>
> 2. The causes of action alleged in the Complaint are barred by the applicable statute of limitations.
>
> 3. Neither the Defendant or Land Investment and Development Corporation, its predecessor, was guilty of any negligence which proximately caused or contributed to the Plaintiffs' water problem or any damages, losses or expenses incurred by the Plaintiffs.

Plaintiffs moved for partial summary judgment against the seller, which motion was overruled.

The Trial Court entered the following Order:

> Upon consideration of the entire record herein, the court concludes that defendant Houston Ezell Corporation's Motion for Summary Judgment is not well taken and the same is hereby overruled. Plaintiff is hereby awarded summary judgment on the issue of defendant/developer's liability provided said defendant fails to sustain the affirmative defense of bar of the statute of limitations.
>
> ALL SO ORDERED this 14th day of December 1995.

The developer moved for an order bifurcating the remaining issue of statute of limitations from the issue of damages, and for hearing on the issue. The motion was sustained.

All pleadings and orders to this point were under captions containing the names of all three captioned defendants.

The captions of the succeeding memorandum and final order of the Trial Judge contain only the name of the defendant-developer, omitting the other two defendants.

The Memorandum reads as follows:

> This bifurcated case was heard on August 16, 1996, on the affirmative defense of statute of limitations and/or statute of repose. By order entered December 14, 1995, Judge Henry D. Bell granted summary judgment as to liability, except for defendant's right to assert the statute of limitations defense. By order entered April 23, 1996, the court bifurcated the remaining issue of damages and set a hearing on the statute of limitations issue.
>
> On August 16, the court heard the testimony of the parties and received additional evidence on the sole issue before it. After due consideration, the court finds that the statute of limitations/statute of repose defense has been sustained and the case must be dismissed.
>
> The gravamen of this complaint is that both a surface water and subsurface water problem exist on the lot and under the house where plaintiffs' residence is located. Their homebuilder, T. J. Neumann & Associates, Inc. ("Neumann (sic)), who sold them their lot, has taken bankruptcy and is no longer available for suit. They have sued the original developer of the property under theories of negligence, permanent nuisance, and violation of the Consumer Protection Act.
>
> The parties do not dispute that defendant sold this property to the builder on March 31, 1986. The builder then constructed a home on the lot. The home was substantially completed and the plaintiffs received their deed on March 27, 1987. This lawsuit was not filed until December 14, 1993, six and one-half years later.
>
> At issue in the court's determination are the three-year statute of limitations for damage to real property (T.C.A. § 28-3-105); the four-year statute of repose related to real property construction (T.C.A. § 28-3-202); and the one-year statute of limitations (with a four-year statute of repose) for violations of the Tennessee Consumer Protection Act (T.C.A. § 47-18-110). Plaintiffs' suit was not brought timely unless they can show that the applicable statute(s) was/were tolled for some period of time by the actions of defendant that were fraudulent or intended to conceal the real cause of action.

The pertinent facts are as follows. Defendant Houston Ezell Corporation (formerly known as Land Investment Corporation) purchased a large acreage in Williamson County for the purpose of subdividing the land into one-acre tracts on which single family residences could be constructed. Defendant developed the land in compliance with all applicable governmental rules and regulations. At no time during the development process did any employee, agent, or other representative of defendant see or hear about any unusual flow or accumulation of water on the acreage which eventually comprised the subdivision known as Brentmeade Estates. Defendant ultimately sold Lot 156, the lot in question of this lawsuit, to Neumann in March 1986. Neumann then began construction of a home on this lot.

During construction of the home, a Neumann employee of the builder observed water seeping from a rock on the property. Neumann's foreman called defendant for advice because the builder was new to Tennessee and was inexperienced in dealing with subsurface water issues. Ted Sanders, an officer of defendant, went to the lot but did not observe any flow or accumulation of water from or around the rock at that time. Mr. Sanders made suggestions to the foreman that an underground drainage pipe be installed to the edge of the property line. Neumann completed this installation. Defendant then agreed to install a pipe from the property line under the street to connect to a storm drain on the opposite side of the street. The City of Brentwood inspector approved the installation of the pipe under the road. Defendant was not directly involved in the installation of the pipe on the property.

Plaintiffs purchased the lot and moved into the residence in March 1987. Several months after they took possession, plaintiffs noticed water standing in their back yard after a heavy rain. They had never experienced this problem before, but it did not cause them great concern at the time. Within a month or two after that, a neighbor called and pointed out water flowing on their property between the two houses from an area in the back of their property. Water was not only standing but flowing.

About six months later, in early 1988, plaintiffs observed that every time it rained water would start pooling in the same back yard area. The accumulation became much larger than before. Mr. Bernard pinpointed six areas flowing from underground that contributed to the pooling. This did create concern. Mr. Bernard then contacted defendant for the first time. He also contacted his attorney, who came to the site, personally observed the six flowing streams, and made a video.

In response to that call Doug Sanders, an agent of defendant and acquaintance of Mrs. Bernard, came immediately to the property and viewed the six water sources. Plaintiff requested help from defendant to resolve the

problem. A few weeks later, in about March 1988, an electrician working under plaintiffs' house advised them about a "serious" standing water problem there. Mr. Bernard then went under his home for the first time. He again called defendant, reported the problem, and sought assistance. Defendant representatives returned to the house, observed the water and building debris left by Neumann after construction, and took action to pump the water and remove the debris from underneath the house. The positive drain also was cleaned.

In the fall of 1988, Mr. Bernard again reported an accumulation of water under his house. Defendant again responded and pumped out the water. At that time Ted Sanders also employed Barge Waggoner Sumner & Cannon to investigate. Dan Barge, III proposed the installation of a French drain to intercept the water coming from the back of the lot and divert it around the house. This drain was installed at no cost to plaintiff in early 1989. The defendant also employed a subcontractor to rework the earthen drainage ditch at the rear of the property. Immediately upon completion of these actions, all parties hoped that they had corrected the problem.

However, within six to eight months after this work was done by defendant, Mr. Bernard testified that it was "quite evident" that the problems had not been cured. At that time he contacted an attorney to give him advice about what his rights were. However, he did not contact defendant again until early 1993.

In 1993 plaintiffs noticed a musty odor under their house, and identified water accumulating there again. They again contacted defendant, who employed a hydrologist to prepare a report. As a result of the report made by Ogden Environmental and Energy Services ("Ogden"), plaintiffs have now been given a specific opinion about the cause of the water problem, and a specific recommendation about what needs to be done to correct it. Plaintiffs claim that the receipt of this report constitutes the creation of their cause of action and starts the running of the statute of limitations. They filed this suit on December 14, 1993.

Plaintiffs asserted at trial that the construction of the pipe across their property (not done by defendant), and the failure to advise of that construction, constitutes one part of their claim. They do not assert that plaintiffs created the underground springs. They do contend that defendant's superior knowledge about the flowing water in 1986 gave rise to a duty further to investigate it, and the failure to take that step gives rise to a cause of action. They apparently did not allege that any remedial work done in 1988 or 1989 gives rise to a cause of action, but only that that work helped conceal the extent of the problem. Plaintiffs rely heavily on statements made in Prescott v. Adams, 627 S.W.2d 134 (Tenn. App. 1981). However, that case is distinguishable because it arose out of a court's grant of summary judgment.

In that case the trial court found that there were issues of fact concerning the allegations of fraud and concealment, and that summary judgment was not appropriate. In the instant case defendant also did not prevail on its earlier motion for summary judgment. The matter is before the court now, however, after trial on the merits. This court has heard more proof than was presented during the motion for summary judgment, and is in a position to evaluate and weigh the proof presented.

This court is convinced that the cause of action for damages arose, if at all, many years before this lawsuit was filed. If there is a permanent nuisance, it has existed since before plaintiffs purchased their property, and has manifested itself in several ways. If there is a violation of the Consumer Protection Act, it must be based on some action or omission taken not later than early 1989. The fact that plaintiffs did not discover a fraud does not itself toll the statute of limitations. There must be continued affirmative, fraudulent concealment of the cause of action by defendant. In addition, the defendant must know that the plaintiff has a cause of action and must conceal it in such a fashion that, even if plaintiff were diligent, he would not be able to discover it. Phillips v. Phillips, 526 S.W.2d 439 (Tenn. 1975). It is not the fraud, but its concealment by the party perpetrating it, unmixed with fault or negligence on the part of him who complains, which works this result. Id. At 440.

In this case the court is convinced that defendant never affirmatively committed fraud or concealed a cause of action. Each time plaintiffs called a representative of defendant responded. Both parties had the same amount of information concerning the problems as they developed. From 1988 forward, Mr. Bernard was fully aware that there were at least six springs causing subsurface water flow in his back yard. He was aware that water stood under the house after each rain. Plaintiffs contend that they did not know they had a cause of action until the Ogden report was made in 1993. However, they have presented no proof to suggest why they could not have hired a hydrologist earlier.

Ultimately it is not necessary for the court to analyze each potential accrual date discussed by the parties in this lawsuit. It is sufficient to find that the last work performed by defendant on this property and the last statements made by defendant, occurred in early 1989. Within six or eight months after that time, plaintiff Charles W. Bernard was aware that that work had not successfully contained the problem and that the problem continued to exist. This concerned him enough to cause him to call his attorney and to seek advice about his rights in the situation. At this point, if not before, plaintiffs clearly had a cause of action, and knew they had a cause of action. Harvey v. Knox County, 1988 Tenn. App. Lexis 487 (Tenn. App. M.S., August 3, 1988). It was not necessary that they know all the reasons for the problem or the extent of the problems. They knew the problem was worse after a heavy

rain fall, but testified that it did not rain much between 1989 and 1993.  Plaintiffs did not made any further contact with defendant until early 1993, and did not file this lawsuit until December 14, 1993.  Their lawsuit is barred by all applicable statutes of limitation and/or repose.

This Memorandum shall be placed of record, but need not be spread upon the minutes of the court.  An order of dismissal is being entered contemporaneously.

The Order reads as follows:

In accordance with the Memorandum being entered contemporaneously, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiffs' case against defendant Houston Ezell Corporation shall be, and is hereby, dismissed.  Costs are taxed to plaintiffs, for which execution may issue if necessary.

The caption of the Notice of Appeal contains the names of all three defendants, but the appeal bond is made only to the developer.

## THE PARTIES AND ISSUES ON APPEAL

The cover, certificate of the Trial Clerk and brief of appellant list the names of all three defendants.  A brief has been filed in this Court on behalf of the developer, and a separate brief has been filed on behalf of the City.  No brief has been filed on behalf of Land Investment Corporation.

Plaintiffs state the issues on appeal as follows:

1. Within the meaning of Rules 13d and 36 of the Tennessee Rules of Appellate Procedure, does the preponderance of the evidence support the trial court's ruling that no conduct was committed by the Defendant which violated a duty to disclose, within the meaning of the T.C.A. § 28-3-205, tolling the statute of limitations?

2. Did the Defendant's conduct in performing the corrective work, while not disclosing a full history of the problem, effect an estoppel of the statute of limitations defense?

3. Was the trial court correct in its determination that the CITY OF BRENTWOOD is immune from claims arising from the CITY'S failure to conduct any final inspection of the BERNARD residence and thereafter permitting its sale and occupancy, after failing an earlier inspection?

The developer states the issues on appeal as follows:

A. Did Chancellor (sic) Cornelia A. Clark err, after hearing all the proof, by determining that the statute of limitations barred the Plaintiffs' alleged cause of action against the Defendants?

B. Did Chancellor Henry Denmark Bell err by granting the Plaintiffs' Motion for Partial Summary Judgment and denying the Defendant's Motion for Summary Judgment?

The City states the issue on appeal as follows:

I. Whether the trial court was in error in granting summary judgement (sic) in favor of the City of Brentwood pursuant to the Tennessee Government Tort Liability Act, on the basis of immunity to the plaintiffs' theories of negligent inspection, issuance or failure to issue a building permit and nuisance.

## FIRST AND SECOND ISSUES

### Liability of Developer

T.C.A. § 28-3-202 reads as follows:

**Limitation of actions**. - All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement. [Acts 1965, ch. 353, § 1; 1980 (Adj. S.), ch. 811, § 1; T.C.A., § 28-314.]

As found by the Trial Judge, the basic problem was excessive water on the lot, particularly under the house, which plaintiffs reported to the developer "early in 1988" (before March). This suit

-11-

was initiated on December 14, 1993, more than four years later, at which time, any action against the developer for negligence in the planning of the construction was barred. Plaintiffs insist that the developer was guilty of fraudulent concealment which tolled the statute of limitations and/or estopped the defense of statute of limitations. A careful examination of appellant's brief and the record fails to disclose any citation to the record or evidence indicating any concealment or failure to disclose by the developer subsequent to the occasion in "early in 1988" when plaintiffs' disclosed their knowledge of the defects by complaining of them to the developer. No such subsequent negligent or fraudulent concealment is cited in plaintiffs' brief or found in the record.

Nevertheless, plaintiffs insist that the developer committed actionable subsequent concealment when, in their efforts to satisfy plaintiffs' complaints, they agreed to and did install an 8" drainage pipe partly on plaintiffs' property and partly upon the public right of way. Plaintiffs' brief contains citations of numerous authorities which are applicable to particular circumstances, but the brief contains no citation of evidence of facts in the present case which would establish wrongdoing by either defendant at any time within the period of limitation prior to the filing of this suit.

Plaintiffs assert:

> The defendants' conduct in performing corrective work while not disclosing a full history of the problem effected an estoppel of the statute of limitation problem.

This Court does not understand the general rule to be that any effort by a wrongdoer to remedy the effect of the wrongdoing would effectively bar the defense of the statute of limitations. In *Jackson v. Kemp*, 211 Tenn. 438, 365 S.W.2d 437 (1963), the Supreme Court said:

> A statute of limitation <u>may be waived by express contract or by necessary implications</u> or its benefits may be lost by <u>conduct invoking the established principles of estoppel in pais</u>. (Emphasis supplied)

No evidence is cited or found to show that either or both of the defendants represented, promised or contracted to remedy all of the subject defects in exchange for plaintiffs' delay in

-12-

bringing suit, or that plaintiffs did allow the statute to expire in reliance upon such representation, promise or contract. *Sharks v. Metropolitan Government of Nashville and Davidson County*, Tenn. App. 1989 states:

> Where by <u>promises</u> and <u>appearances</u> one party is induced to believe that the other party is <u>going to pay or otherwise satisfy the claim</u> of the first party, and <u>in reliance on that representation</u> the <u>first party delays filing suit</u>, the party making the representation <u>may be estopped</u> to raise the statute of limitations as a defense. (Emphasis supplied)

In short, plaintiffs have not provided this Court with an evidentiary basis upon which this Court might apply the authorities cited.

**THIRD ISSUE**

**Immunity of the City**

T.C.A. § 29-20-205 provides in pertinent part as follows:

> **Removal of immunity for injury caused by negligent act or omission of employees - Exceptions**. - Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:
> - - - -
> (2) Arises out of false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights;
>
> (3) Arises out of the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization;
>
> (4) Arises out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property.

Plaintiffs' suit against the City is clearly based upon alleged acts or omissions of its agents making an inadequate or negligent inspection of property, and/or issuance of a permit, license, certificate, approval or authorization. It is true that plaintiffs argue that defendants created a

-13-

nuisance, but no evidence is cited or found that the efforts of the defendants, or either of them to remedy the effects of the defects created a nuisance.

-14-

Accordingly, this Court concurs in the finding of the Trial Court that the City of Brentwood and its employees are statutorily immune to the rights of action asserted by plaintiffs.

The disposition of this appeal is contrary to the desire of this Court to reach a fair result. However, circumstances over which this Court has no control require the disposition. Governmental immunity from suit has its roots in the common law; and, under our Constitution the power of limiting that immunity is reserved to the Legislature. In its wisdom, the Legislature has seen fit to preserve that immunity in respect to the actions and inaction of the City in the present case.

Statutes of limitation are likewise the exclusive province of the Legislature, and exceptions to legislation may not be granted by the courts. Apparent exceptions are not true exceptions but recognition of special facts which produce a different right of action to which a different limitation applies.

Finally, plaintiffs' failure to timely ascertain their rights and timely pursue their remedies has its part in their failure to obtain relief.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the plaintiffs and their surety. The cause is remanded to the Trial Court for further necessary proceedings.

**AFFIRMED AND REMANDED**


_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCURS:


_____
BEN H. CANTRELL, JUDGE


_____
WILLIAM B. CAIN, SPECIAL JUDGE