**OPERATIONS MANAGEMENT
INTERNATIONAL, INC.,
Plaintiff,**

v.

**TENGASCO, INC., Defendant.**

No. 3:98–CV–269.

United States District Court,
E.D. Tennessee.

Feb. 3, 1999.

Shelby R. Grubbs, Denise A. Miller, Miller & Martin, Chattanooga, TN, for Plaintiff.

Robert L. Crossley, Crossley Law Firm, PC, Knoxville, TN, for Defendant.

### MEMORANDUM AND ORDER

MURRIAN, United States Magistrate Judge.

The motion of Operations Management International, Inc. ("OMI") for summary judgment has been referred to the undersigned for disposition pursuant to the consent of the parties and 28 U.S.C. § 636(c) and the Rules of this Court [Docs. 13, 24]. The defendant, Tengasco, Inc. ("Tengasco"), filed a written response in opposition to the motion [Doc.' 19]. OMI has filed a reply to defendant's response [Doc. 21]. This matter was argued before the undersigned on January 26, 1999.

### I. *Introduction*

OMI moves for summary judgment in its favor on the ground that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.' OMI brought this case as a declaratory judgment action seeking a declaration that the Teaming Agreement entered into by OMI and Tengasco is not a binding contract because it is illusory and did not obligate OMI to subcontract certain services through Tengasco. In the alternative, OMI seeks a declaration that if the court determines it is a binding contract, that OMI is not in breach of that contract. OMI contends that notwithstanding its present position Tengasco has not treated the Teaming Agreement as a binding obligation and contends that neither the Teaming Agreement nor the transactions it contemplated fall within the scope of the Tennessee Consumer Protection Act as alleged in the counterclaim. The motion is supported by the affidavit of Henry Huffman, OMI's Project Director, the affidavit of Shelby Grubbs, OMI's attorney, and five exhibits.

The defendant has filed an answer and counterclaim in which it denies that plaintiff is entitled to a declaration that the Teaming Agreement is not a valid and enforceable contract, and denies that defendant has in any manner breached that contract. Additionally, the defendant, as plaintiff by counterclaim, states that the Teaming Agreement was executed on March 12, 1997; that the contract provided for collaboration of OMI and Tengasco seeking a contract with the Department of Energy ("DOE") in Oak Ridge, Tennessee; that Tengasco spent large amounts of money. and time and effort in working with various other companies and individuals in other states in preparing and performing Tengasco's obligation under the Teaming Agreement; that Tengasco has fulfilled all its obligations under the Teaming Agreement except those prevented by OMI's refusal to cooperate with it; that it is OMI who has breached and repudiated the Teaming Agreement; that this prevented Tengasco from participating in the project that is the subject of what has become OMI's long-term contract with DOE; that Tengasco just-

ifiably relied upon the promises of OMI respecting the subject matter of the Teaming Agreement and OMI's contract with DOE; that OMI should be estopped to deny the existence of its obligation pursuant to the Restatement of Contracts § 90; and that OMI's acts, omissions and conduct constitute unfair and deceptive acts within the meaning of the Tennessee Consumer Protection Act of 1977, T.C.A. § 47–18–101, *et seq.*

Tengasco seeks compensatory damages in the amount of $10,000,000 and seeks trebling of those damages under the Tennessee Consumer Protection Act.

## II. *Contentions of the Parties*

OMI contends that the parties began discussions in February, 1997, for the purpose of Tengasco working with OMI to provide utility system management, operations and maintenance at the East Tennessee Technology Park ("ETTP") in Oak Ridge, Tennessee; that it was understood that Tengasco would only provide such services if OMI were successful in negotiating a contract with DOE and the Community Reuse Organization of East Tennessee ("CROET"). OMI states that it manages water and waste water facilities for customers in government and industry and Tengasco, inter alia, explores for and develops natural gas and oil reserves. OMI characterizes the Teaming Agreement as a document which refers to the *possible* management, operation and maintenance of the steam plant and distribution system, as well as a narrow scope of service for natural gas pipeline maintenance at ETTP.

OMI contends that Tengasco's areas of expertise do not include operation of steam generation and distribution systems; that although Tengasco was continually advised that it would have to obtain this expertise if it was to be considered as a possible subcontractor, it has failed to do so; that pursuant to its contract with CROET, OMI was required to begin a transition period at ETTP on March 20, 1998, and to begin operations on April 1, 1998; and that to date Tengasco has not obtained the requisite expertise and it has not been involved in any aspect of the steam system management or operation. OMI contends that Tengasco has consistently treated the Teaming Agreement as non-binding; that it stated in its 1997 Annual Report that "management has until June 1, 1998, to determine if the Oak Ridge program [the subject of the Teaming Agreement] is in the best interest of the company and its shareholders"; that in a letter dated April 12, 1998, Robert Carter, Tengasco's vice-president, discussed actions it was taking "in the event that Tengasco enters into a contract to operate the steam facility at the K–25 plant in Oak Ridge"; and that indeed as late as April 29, 1998, Mr. Carter was complaining that "only 60 days remained during which Tengasco is to do its due diligence and make a determination as to whether the proposed Teaming arrangement [sic] is approved by management and presented to the board of directors."

OMI argues that the Teaming Agreement, by its terms, does not create a contractual obligation and is merely an agreement to agree. OMI points out that Tengasco's subsequent communications clearly demonstrate it did not believe the Teaming Agreement to be a binding obligation and because there is no contract, Tengasco was precluded from asserting the doctrine of estoppel. Finally, OMI argues that the Tennessee Consumer Protection Act does not apply to the Teaming Agreement.

Tengasco agrees that the parties signed a confidential Teaming Agreement on March 12, 1997. Tengasco argues that it was based upon adequate consideration; that the Teaming Agreement is not an illusory bargain or an agreement to agree; that it is a binding contract, enforceable to its terms. Additionally, Tengasco claims that it is entitled to recover money damages from OMI pursuant to provisions of the Tennessee Consumer Protection Act.

## III. *Summary Judgment Standard*

Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted if the court finds that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The United States Supreme Court held in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), that

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

106 S.Ct. at 2552–53. The standard for summary judgment

mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)[1], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts, must be viewed in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court's function in considering a motion for summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether or not there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–250, 106 S.Ct. at 2511.

### IV. *Is There a Binding Contract?*

 The Restatement of Contracts 2d § 2(1) defines promise as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." An illusory promise is not a promise at all as that term is defined in the Restatement. *See* 1 Joseph M. Perillo, *Corbin on Contracts* § 1.17 (Rev. ed.1993). Example of an illusory promise is found in the case of *Automatic Sprinkler Corp. of America v. Anderson*, 243 Ga. 867, 257 S.E.2d 283 (1979), in which the agreement provided "the award of any direct incentive is entirely within the discretion of the corporation and nothing herein will be construed to the contrary." It was held in that case that the presence or absence of good faith in the exercise of discretion was completely irrelevant because the promise made was illusory. The Teaming Agreement is Exhibit 1 to Doc. 13 in the present record. I find that it meets the requirements of an enforceable contract. A contract is an agreement having sufficient consideration to do or not to do a particular thing. *Smith v. Pickwick Electric Co–op.*, 212 Tenn. 62, 367 S.W.2d 775, 780 (1963). The Teaming Agreement contains words that indicate mutual promises to do or not to do particular things. Set out below is the language which so indicates.

- Paragraph 1: "This AGREEMENT;" "The Team agrees . . . ;"

- Paragraph 2: "Exclusive AGREEMENT;" "respective . . . interests of the parties;" "TenGasCo agrees to work exclusively with OMI . . . ;"

- Paragraph 3: "in consideration of the mutual promises herein . . . ;"

- Paragraph 4: "TenGasCo will be a subcontractor to OMI and will perform . . . ;" "No Team member shall pursue the Project outside of this AGREEMENT, either as a member of another team or as a separate firm without the written consent of the other Team members;"

- Paragraph 6: "This AGREEMENT will terminated [sic] on the happening of the following, whichever occurs first . . . ;"

- Paragraph 7: "This AGREEMENT contains the entire understanding . . . and supersedes previous understandings, commitments or agreements, whether

---

1. Pursuant to a 1991 amendment to Rule 50(a), Fed.R.Civ.P., directed verdict is now referred to as a "judgment as a matter of law," Rule 50(a)(1), Fed.R.Civ.P., and comments to the 1991 Amendment thereto.

oral or written ...;" "This AGREE-MENT may be amended at any time under mutual written agreement of all the Team members;" "This AGREE-MENT shall not be assigned by any Team member without the prior written approval of the other parties. No Team member may assign or subcontract the services to be performed by itself without the prior approval of the other party;"

- Paragraph 8: "THIS AGREEMENT IS *ACCEPTED* AND APPROVED ON BEHALF OF EACH TEAM MEMBER BY THEIR UNDERSIGNED DULY AUTHORIZED OFFICERS." (Emphasis added.)

■■ Consideration in a contract may be either a benefit to the promisor or a detriment or an obligation upon the promisee. 7 *Tennessee Jurisprudence: Contracts* § 28 at 86 (1997). Mutual promises are good consideration to uphold an agreement. *Id.* at § 34. Consideration exists when the promisee does something that it is under no legal obligation to do or refrains from doing something which it has a legal right to do. *Brown Oil Co. v. Johnson*, 689 S.W.2d 149, 151 (Tenn.1985).

I cannot agree with OMI that the Teaming Agreement was illusory or simply an agreement to agree. It is an agreement to team up, to cooperate, and to pursue a common goal, *i.e.,* to pursue the promised management, operations and maintenance of the utility systems at the DOE K–25 site in Oak Ridge. Furthermore, in paragraph 4, the agreement flatly states that Tengasco "will be a subcontractor to OMI and will perform the management, operation and maintenance of the steam plant and distribution system, the electrical substations and the distribution system and the natural gas distribution system." Henry Huffman, Project Director for OMI, stated in a letter to Wesley Baker, General Counsel for Tengasco, that OMI had honored the exclusive teaming provision in the Teaming Agreement but complained that OMI understood that Tengasco has independently and directly submitted, without prior approval or knowledge of OMI, an alternate proposal for electric power generation to CROET and DOE. Mr. Huffman stated that

"[i]ndependently submitting a proposal for the project constitutes a violation of the [Teaming] Agreement." Exhibit 1 to Doc. 18 at 3. Thus, OMI acknowledges that the Teaming Agreement was more than just some type of illusory agreement to agree; rather, according to Mr. Huffman, the exclusive teaming provision in it was binding on Tengasco and OMI believed Tengasco had violated that provision.

In response to the motion for summary judgment, affiants Wesley Baker and Joseph Armstrong both make it clear that Tengasco's position is that OMI failed to cooperate with Tengasco pursuant to the Teaming Agreement. Mr. Armstrong, a director with Tengasco, states "[e]xcept where it was prevented from doing so by OMI's non-cooperation, Tengasco has performed all of its obligations under said Teaming Agreement...." Exhibit A to Doc. 18.

■■■ There is an implied duty of good faith and fair dealing in all contracts. *Williams v. Maremont Corp.*, 776 S.W.2d 78, 81 (Tenn.App.1988). There is also an implied obligation in every contract that a party thereto will not interfere with the other party's performance—the other party must be afforded the opportunity to perform. *Foster v. Creighton Co. & Wilson Contracting Co.*, 579 S.W.2d 422, 425–26 (Tenn.App.1978).

The courts must construe written contracts of doubtful meaning so as to give them effect rather than destroy them.... Generally, in construing a contract, it will be presumed that one intended to execute a valid rather than an invalid contract.

7 *Tennessee Jurisprudence: Contracts* § 49 at 108–109 (1997) (citations omitted).

■ The Teaming Agreement contains mutual promises and obligations. It is supported by adequate consideration and it is not illusory. Whether it was breached and by whom is a question for another day. The plaintiff's motion for summary judgment will therefore be denied.

### V. Restatement of Contracts, § 90

Since, as indicated above, the undersigned has found that there is an enforceable contract between the parties, the counterclaim

based on § 90 of the Restatement of Contracts may properly be viewed as an alternative claim for relief. Of course, relief in the alternative or of several different types may be demanded. Fed.R.Civ.P. 8(a).

Plaintiff and defendant-by-counterclaim argues that estoppel is available to protect a right but not to create one and that it cannot be used offensively to create a contract where none existed. A contract does exist; however, even if there were a question about whether the parties were bound by the contract or agreement, in the case of *Jackson v. Kemp,* 211 Tenn. 438, 444, 365 S.W.2d 437, 440 (1963), the Tennessee Supreme Court relied on the first Restatement § 90 defensively to suspend the running of the statute of limitations *and offensively* to enforce an insurance adjustor's promise to pay plaintiff's medical bills if plaintiff retained no attorney and dealt only with the adjustor.

In the case of *Bill Brown Construction Co. v. Glens Falls Ins. Co.,* 818 S.W.2d 1 (Tenn. 1991), the insured was a trucker who specialized in hauling large cargos and told the insured's agent that he wanted "full insurance coverage" on the large cargo he transported. The agent promised: "That's no problem, you've got full coverage." After an accident in which some large cargo was damaged, the insurer denied coverage. The court estopped the insurer from denying coverage:

> We are not unmindful of the force of the argument that the insurer should not be liable for coverage for which it has received no consideration. However, the same argument can be made against the vicarious liability of all principals for the tortious acts of their agents. When the misrepresentation of the agent is viewed as an action in tort, the absence of additional consideration to the insurer is irrelevant. When viewed as an action on an insurance contract, we agree with the courts which have considered the consideration or argument and concluded that: It is here that promissory estoppel fills the gap.... In *Jackson v. Kemp,* 211 Tenn. 438, 365 S.W.2d 437 (1963), we adopted section 90 of the Restatement of the Law of Contracts, as a substitute for consideration for an agent's promise.

818 S.W.2d at 12.

In the case of *Foster and Creighton Co. v. Wilson Contracting,* 579 S.W.2d 422 (Tenn. App.1978), the plaintiff was a paving subcontractor who had sued the general contractors for extra expense damages due to delays in paving airport runways caused by other contractors in not performing their work in a timely manner. The plaintiff was induced to get ready to perform by a promise by the general contractor as follows: "You can start on the asphalt [resurfacing] and when you get through with that, we'll have the rest of the job where you can proceed along. So come on in." The court applied the First Restatement § 90 to that promise as an independent theory of relief and granted reliance damages. *Id.* at 427–28.

Section 90 of the Restatement of the Law of Contracts provides as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action of forbearance is binding if injustice can be avoided only by enforcement of the promise.

Based on the undersigned's review of the Teaming Agreement and the representations made therein by OMI, the undersigned cannot say at this time that there are no genuine issues of material fact and that the plaintiff and defendant-by-counterclaim is entitled to judgment as a matter of law with regard to the claim made against it under section 90 of the Restatement of Contracts.

Joseph Armstrong, a Director of Tengasco, has submitted his affidavit in opposition to the motion for summary judgment. Exhibit A to Doc. 19. That affidavit provides in pertinent part as follows:

> Paragraph 6: Except where it was prevented from doing so by OMI's non-cooperation, Tengasco has performed all of its obligations under the said Teaming Agreement, including, but not limited to, the acquisition of expertise with respect to steam generation.

Paragraph 7: In reliance on the Teaming Agreement, Tengasco has, to its detriment, expended large sums of money and has devoted large amounts of time and energy to its performance of the Teaming Agreement.

Paragraph 8: OMI was in fact awarded the prime contract by CROET, but OMI has failed and refused to sign the subcontract with Tengasco in accordance with the terms of the Teaming Agreement.

For the reasons indicated, the motion of plaintiff and defendant-by-counterclaim to dismiss the claim based on Restatement of Contracts § 90 will be denied.

### VI. *Tennessee Consumer Protection Act*

■ The undersigned is of the opinion that under the particular facts and circumstances of this case the Tennessee Consumer Protection Act ("TCPA"), T.C.A. §§ 47–18–101, *et seq.*, has no application.

As pointed out by District Judge Higgins in the case of *Smith Corona Corp. v. Pelikan, Inc.*, 784 F.Supp. 452 (M.D.Tenn.1992), prior to 1989 only consumers could recover damages under the TCPA. In 1989, however, the Tennessee Legislature inserted the phrase "or other person" after the word "consumer" in T.C.A. § 47–18–109(a)(4)(A), (B), and (C). T.C.A. § 47–18–103(2) defines a "consumer" as "any natural person," but section 47–18–103(7) defines "person" to include, inter alia, corporations. Thus, it would appear, that corporations may recover damages under the TCPA. The parties agree that this is an open question under Tennessee law, however. I do note that under § 47–18–103 the word "person" is modified by the word "natural." In any event, I will assume for purposes of this opinion, that a corporation, under appropriate circumstances, may sue for damages under the TCPA.

The instant case is not, however, the type of case contemplated for inclusion in the TCPA.

I agree with the analysis of the plaintiff and defendant-by-counterclaim that this case does not involve a situation where a defendant has advertised or offered for sale or distributed any goods or services. This

takes it out of the TCPA in my opinion. T.C.A. § 47–18–104 sets forth the "unfair and deceptive acts or practices" which are prohibited. Only acts or practices affecting the conduct of "any trade or commerce" are proscribed. T.C.A. § 47–18–104(a) and (b). T.C.A. § 47–18–103(9) provides as follows:

"Trade," "commerce," or "consumer transaction" means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated.

There is no allegation here that OMI has advertised or offered for sale or distributed any type of goods or services. Tengasco was not buying anything from OMI—neither goods nor services nor property. The Teaming Agreement between the parties does not involve the purchase by Tengasco or for that matter OMI of anything of value. There is no indication that OMI attempted to induce Tengasco to buy anything through deceptive advertising or any other means. This simply cannot be characterized as any type of consumer transaction.

Corporations can be involved in consumer transactions. For example, a construction company that buys a front end loader from a manufacturer would likely have standing to sue under the TCPA if any type of unfair or deceptive act as set forth in § 47–18–104 was involved in the advertising, sale or distribution of the front end loader. This is just one example of where a corporation might properly be deemed a "consumer" under the TCPA.

### VII. *Conclusion*

For the reasons indicated, the motion of the plaintiff and defendant-by-counterclaim for summary judgment is hereby **GRANTED** with respect to the claim against it under the TCPA, but is otherwise **DENIED.**

**IT IS SO ORDERED.**