Edmund **LINDSEY** and Mattie Lindsey, Plaintiffs,

v.

**ALLSTATE INSURANCE COMPANY,** Josie H. Fant, and Harry B. Howard, Defendants.

No. 98–2439 DV.

United States District Court, W.D. Tennessee, Western Division.

Jan. 13, 1999.

Wanda Abioto, Law Office of Wanda Abioto, Southaven, MS, for Edmund Lindsey, Mattie Lindsey.

Charles Jeffrey Barnett, McNabb Holley & Waldrop, Memphis, TN, Timothy A. Wolfe, Bates Meckler Bulger & Tilson, Chicago, IL, for Allstate Insurance Company, Josie H. Fant, Harry B. Howard.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS IN PART AND DENYING MOTION TO DISMISS IN PART

DONALD, District Judge.

Before this court is the motion of Defendant, Allstate Insurance Company, to dismiss Plaintiffs', Edmund Lindsey and Mattie Lindsey, complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs allege that Defendants violated their rights under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, and 42 U.S.C. §§ 1981 and 1982 by discriminating

against them on the basis of race in premiums, claims handling procedures and policy renewal. Plaintiffs further allege that Defendant conspired with its agents, Josie H. Fant ("Fant") and Harry B. Howard ("Howard"), to deprive them of the equal protection of the laws in violation of 42 U.S.C. § 1985. Alternatively, Plaintiffs allege that Defendant neglected to prevent its agents and adjusters from conspiring to discriminate against them in violation of 42 U.S.C. § 1986. Plaintiffs contend that Defendant devised a scheme to defraud African–Americans policyholders, committed extortion and mail fraud in furtherance of this scheme, and derived income from this alleged pattern of racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. Plaintiffs also contend that Defendant violated the Tennessee Insurance Trade Practices Act, Tenn.Code Ann. §§ 56–8–101–118 ("TITPA"), and the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47–18–101–121 ("TCPA"), by engaging in false advertising and misleading Plaintiffs concerning the benefits and conditions of policies offered to African–American policyholders. Plaintiffs further contend that Defendant's discriminatory insurance practices violated the Tennessee Human Rights Act, Tenn.Code Ann. § 4–21–101 et seq. ("THRA"). Finally, Plaintiffs assert a common law contract claim based on their allegations that Defendant's discriminatory insurance practices deprived them of the benefit of the bargain struck at the time the insurance contracts were formed.

In support of its motion to dismiss, Defendant contends that 1) the FHA does not apply to Plaintiffs' claims-handling allegations (Def.'s Mot. to Dismiss ¶ 2), 2) Plaintiffs' §§ 1981 and 1982 claims are barred by the statute of limitations and that Plaintiffs have failed to plead intentional discrimination (Def.'s Mot. to Dismiss ¶ 3), 3) Plaintiffs' §§ 1985 and 1986 must fail because Plaintiffs have failed to allege a conspiracy (Def.'s Mot. to Dismiss ¶ 4), 4) § 1988 does not create a cause of action (Def.'s Mot. to Dismiss ¶ 5), 5) any RICO action is preempted by the TITPA under the McCarran–Ferguson Act, 15 U.S.C. § 1012 and Plaintiffs have failed to allege the appropriate injury or any type of "enterprise" required by RICO (Def.'s Mot. to Dismiss ¶ 6), 6) Plaintiffs lack standing under TITPA and fail to allege facts showing a violation of the statute (Def.'s Mot. to Dismiss ¶ 7), 7) Plaintiffs' claims under the TCPA are barred by the statute of limitations and Defendant's claims handling procedures are not actionable under the statute (Def.'s Mot. to Dismiss ¶ 8), 8) Plaintiffs fail to allege facts showing that Defendant denied them access to one of their offices in violation of the THRA (Def.'s Mot. to Dismiss ¶ 9), 9) Plaintiffs' common law contract claims are barred by the statute of limitations (Def.'s Mot. to Dismiss ¶ 10).

For the following reasons, the court grants Defendant's motion to dismiss Plaintiffs' claims under §§ 1985 and 1986, § 1988, RICO, TIPA, TCPA and § 4–21–501 of the THRA and denies Defendant's motion to dismiss Plaintiffs' claims under the FHA, §§ 1981 and 1982, § 4–21–601 of the THRA and Plaintiffs' common law contract claims.

## I. FACTS

Plaintiffs own a home at 4835 Airways Boulevard in Memphis, Tennessee, where they have resided for the past twenty-two years. (Pls.' Compl. ¶ 11). In 1976, Plaintiffs obtained property insurance with Defendant for their home at 4835 Airways Blvd. (Pls.' Compl. ¶ 12). Plaintiffs have also possessed two other insurance policies with Defendant on properties located in Memphis on Weston Drive and in Mississippi. (Pls.' Compl. ¶¶ 13, 14). Plaintiffs purchased an insurance policy for the property in Memphis in 1971 and maintained that policy until October 1995 when they sold the property to a third party. (Pls.' Compl. ¶ 13). Plaintiffs purchased an insurance policy for the Mississippi property in 1987 which continues to cover that property to the present. (Pls.' Compl. ¶¶ 14, 30).

During the twenty-one years the Plaintiffs have maintained property insurance with Defendant on the Airways Blvd. property, Plaintiffs have submitted four claims: one in 1987 for property damage resulting from hail and three claims for burglaries occurring in 1990, 1994 and 1996. (Pls.' Compl. ¶ 19). In

1995, Plaintiffs submitted a claim on the Weston Drive property arising from a burglary. (Pls.' Compl. ¶ 20). Plaintiffs have never submitted any claims on the property located in Mississippi. (Pls.' Compl. ¶ 21).

In 1994, after Plaintiffs notified Defendant of the burglary at Airways Blvd., Defendant's insurance agent, Fant, provided Plaintiff Mattie Lindsey with an authorization form giving Defendant broad access to Plaintiffs' records. (Pls.' Compl. ¶ 22). Plaintiff Mattie Lindsey signed this form without the consent of her husband Plaintiff Edmund Lindsey. (Pls.' Compl. ¶ 22). Later, Plaintiff Mattie Lindsey discussed the authorization form with her husband and they subsequently decided that the form authorized excessive intrusion into their privacy and personal affairs. (Pls.' Compl. ¶ 22). Accordingly, Plaintiffs requested that Defendant return the authorization form. (Pls.' Compl. ¶ 22). Plaintiffs allege that, as a result of this request, Defendant's agents Fant and Howard refused to communicate further with Plaintiffs and took no additional actions to negotiate their claim. (Pls.' Compl. ¶ 24).

On May 20, 1996, Plaintiffs experienced another burglary at the Airways Blvd. property. (Pls.' Compl. ¶ 25). During the investigation of this claim, Plaintiffs signed an authorization form with limitations. (Pls.' Compl. ¶ 25). After receiving the authorization forms, Defendant agreed to consider both the 1994 and 1996 burglary claims on the Airways Blvd. property. (Pls.' Compl. ¶ 25). As part of Defendant's investigation of Plaintiffs' claims, Plaintiffs appeared for a deposition and completed additional informational forms. (Pls.' Compl. ¶ 26). Plaintiffs aver that Defendant's legal counsel canceled the deposition due to scheduling difficulties and refused to accept the completed forms. (Pls.' Compl. ¶ 26).

On February 4, 1997, Plaintiffs received a letter from Defendant denying their claims on the basis that Plaintiffs had not cooperated with Defendant's attorney, failed to cooperate with Defendant's investigation, refused to submit to an examination under oath, and failed to complete a sworn proof of loss within sixty days. (Pls.' Compl. ¶ 27). On May 20, 1997, Defendant denied renewal of Plaintiffs' insurance policy on the Airways Blvd. property. (Pls.' Compl. ¶ 28). Plaintiffs aver that Defendant stated its refusal to renew the policy was based upon Plaintiffs' submission of three claims in the past three years. (Pls.' Compl. ¶ 28). Plaintiffs further aver that they have only submitted two claims in the past three years on the Airways Blvd. property. (Pls.' Compl. ¶ 29).

## II. STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure enables a defendant to file a motion to dismiss for a plaintiff's failure to state a claim upon which relief can be granted. Motions to dismiss under Rule 12(b)(6) are designed to test "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). Dismissal of a complaint for failure to state a claim streamlines litigation by "dispensing with needless discovery and factfinding." *Nietzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Dismissal under Rule 12(b)(6) is appropriate where there is no set of facts which would entitle the plaintiff to recover. *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.1989). In reviewing a defendant's Rule 12(b)(6) motion to dismiss, a district court should construe the complaint in the light most favorable to the plaintiff, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). If an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). As the Supreme Court said in *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon* at 73, 104 S.Ct. 2229.

A district court may not grant a defendant's Rule 12(b)(6) motion to dismiss based

on its disbelief of the plaintiff's factual allegations. *In Re Sofamor Danek Group, Inc.,* 123 F.3d 394 (6th Cir.1997), *cert. denied., Murphy v. Sofamor Danek Group,* —— U.S. ——, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998). It is not the court's function to weigh evidence or evaluate the credibility of witnesses. *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995). Rather, the court should accept all well-pleaded facts as true and not consider matters outside the pleadings. *Hammond* at 175.

Although a court reviewing a Rule 12(b)(6) motion to dismiss should construe the plaintiff's complaint liberally, "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid* at 436. Rather, a plaintiff's complaint will not survive a motion to dismiss under Rule 12(b)(6) unless it contains "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* Accordingly, a district court need not accept as true conclusions of law or unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

1. Fair Housing Act Claim

Plaintiffs assert that Defendant discriminated against them on the basis of their race by charging excessive premiums for property insurance, offering lower replacement value for appropriately filed claims, denying properly filed claims, and engaging in unduly intrusive claims investigations. Plaintiffs also assert that Defendant discriminated against them in its property insurance renewal policy by denying them coverage after their submission of two claims when the company's policy was to deny renewals only after the submission of three claims. Plaintiffs contend that such actions violated their rights under the FHA. Plaintiffs specifically allege that Defendant violated the rights granted to them under 42 U.S.C. § 3604(b).

Section 3604(b) of the FHA provides:

As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—

. . . . .

(b) To discriminate against any person in terms, conditions, or privileges of sale or rental of a dwelling, *or in the provision of services or facilities in connection therewith,* because of race, color religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b) (1995) (emphasis added).

■ Although this section of the FHA does not explicitly indicate that the statute was intended to govern the practices of property insurers, the provision of property insurance can be reasonably interpreted as the "provision of services or facilities in connection" with the sale or rental of a dwelling. Moreover, this interpretation of the FHA has been adopted both by the executive agency entrusted with enforcing the statute and the Sixth Circuit. Section 3614(a) of the FHA authorizes the Secretary of the Department of Housing and Urban Development (HUD) to develop regulations to enforce the statute. Pursuant to this authority, HUD has promulgated regulations which clearly identify discrimination in the provision of property insurance as a violation of the FHA. 24 C.F.R. § 100.70(d)(4). In *Nationwide Mut. Ins. Co. v. Cisneros,* 52 F.3d 1351 (6th Cir.1995), *cert. denied,* 516 U.S. 1140, 116 S.Ct. 973, 133 L.Ed.2d 893 (1996), the Sixth Circuit adopted HUD's interpretation of the FHA as prohibiting discrimination in the provision of property insurance. In *Nationwide Mut. Ins. Co.,* the Sixth Circuit found that the FHA was ambiguous as to its applicability to property insurance providers and, under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), determined that HUD's interpretation of the FHA was reasonable and therefore entitled to judicial deference. *Nationwide* at 1360. The court concluded that "the availability of property insurance has a direct and immediate affect on a person's ability to obtain housing" and held that "the district court did not err in finding that insurance underwriting practices are governed by the Fair Housing Act." *Id.*

Although Defendant concedes that the Sixth Circuit and other courts have found

that discriminatory practices in the provision of insurance are governed by the FHA, Defendant contends that the FHA has only been applied to insurers in narrow contexts when the discriminatory practices threaten an individual's ability to purchase a home. Defendant further contends that all of Plaintiffs' claims under the FHA relate to its claims handling practices and therefore fall outside of the purview of the FHA.

■ Defendant's characterization of Plaintiffs' claims is erroneous. Although Plaintiffs do raise several claims concerning the Defendant's claims handling procedures, they also allege that Defendant engaged in the prohibited practice of redlining by charging substantially higher premiums to communities having a large concentration of African–American and Hispanic American residents.[1] Plaintiffs also aver that Defendant discriminated against African–Americans in its decisions concerning the renewal of property insurance policies. If these claims are later proven true, Plaintiffs certainly would have alleged violations of the FHA. In *Nationwide,* the discriminatory insurance practices which the Sixth Circuit found to be within the ambit of the FHA were of the same nature as those alleged by Plaintiffs in this case. The plaintiffs in *Nationwide* argued that the practice of redlining should not subject their insurance companies to liability under the FHA. The Sixth Circuit rejected this contention and in so doing authorized plaintiffs to assert redlining claims under the FHA. Under *Nationwide,* this court finds no basis to conclude that Plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.

■ Defendant's argument that Plaintiffs failed to allege that Allstate prevented them from purchasing or obtaining a house is also without merit. Defendant seems to assume that a FHA violation with respect to redlining can only be pled where a plaintiff is denied an initial opportunity to purchase a home because of discriminatory practices. Such an assumption is contrary to the Congressional purpose underlying the FHA, HUD regulations and the Sixth Circuit's decision in *Nationwide,* In 42 U.S.C. § 3601, Congress identified the policy underlying the FHA as "to provide, within constitutional limitations, for fair housing throughout the United States." The principal purpose of the FHA is to "vindicate the rights of persons who suffer discrimination in housing." *Kelly v. Secretary, United States Department of Housing and Urban Development,* 3 F.3d 951, 957 (6th Cir.1993), *cert. denied, Staples v. Kelly,* —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 189 (1997). The FHA would provide little vindication to the policy of nondiscrimination in housing if it prohibited property insurers from discriminating against individuals seeking a home, but then subsequently gave property insurers free reign to discriminate in the renewal of property insurance to these same individuals. Maintaining possession of a home is as important to a homeowner as obtaining possession of a home.

The regulations implementing the FHA are consistent with this conclusion. Under the regulations, "providing such services or insurance [property or hazard] differently because of race" constitutes a violation of the FHA. 24 C.F.R. § 100.70(d)(4). There is no evidence anywhere within the regulation indicating that the prohibition applies to discrimination in providing insurance to potential homeowners, but not existing homeowners. Rather, the language applies to discrimination in the renewal of property insurance because such conduct would constitute providing property insurance differently because of race. Moreover, it is also interesting to note that one of the incidents which triggered the lawsuit in *Nationwide* was the alleged, discriminatory cancellation of property insurance to existing homeowners. Thus, the case which provides the law of this Circuit with respect to the applicability of the FHA to property insurance involved prac-

---

1. Defendant's reliance upon *Riley v. Transamerica Ins. Group Premier Ins. Co.,* 923 F.Supp. 882 (E.D.La.1996) is misplaced. *Riley* did not involve a homeowner whose property insurance was allegedly canceled because of discrimination and is therefore distinguishable from the present case. The plaintiff in *Riley* did not even possess legal title to the home in question and alleged a violation of the FHA based solely upon damage claims he had submitted to an insurance company.

tices which Defendant argues are outside the scope of the FHA.

In the present case, Plaintiffs have allegedly suffered the harm of losing property insurance on a home located at 4835 Airways Boulevard. Discrimination by insurers in the renewal of property insurance policies poses as substantial a threat to fair housing as discrimination by insurers in providing property insurance to those seeking to purchase a home. It would seem odd to construe a statute purporting to promote fair housing as prohibiting discrimination in providing property insurance to those seeking a home, but allowing that same discrimination so long as it takes place in the context of renewing those very same insurance policies. Notwithstanding Defendant's assertion to the contrary, allowing victims of discrimination in the renewal of property insurance to bring claims under the FHA does not open the floodgate to all civil rights complaints or expand the FHA into a civil rights statute of general applicability. Rather, such a cause of action should deter discrimination in the provision of property insurance and thereby promote the Congressional interest in fair housing. Accordingly, this court concludes that Plaintiffs have sufficiently pled a FHA violation to survive Defendant's motion to dismiss.

### 2. Sections 1981 and 1982 Claims

Plaintiffs also assert that Defendant's actions in charging excessive premiums for property insurance, providing lower replacement value for appropriately filed claims, denying properly filed claims, and engaging in unduly intrusive claims investigations violated their rights under 42 U.S.C. § 1981 and 42 U.S.C. § 1982. Section 1981 provides in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licens-

es, and exactions of every kind, and to no other.

Section 1982 provides in relevant part:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

■ Defendant responds to these allegations by raising the statute of limitations as a legal defense to Plaintiffs' allegations under § 1981 and § 1982. Under Tennessee law, the statute of limitations for a civil action for compensatory or punitive damages brought under the federal civil rights statutes is one year after the cause of action has accrued. Tenn.Code Ann. § 28–3–104(a)(3). Plaintiffs' claims under 42 U.S.C. §§ 1981 and 1982 constitute civil actions brought under federal civil right statutes and are therefore subject to the one-year statute of limitations. *See Jackson v. Richards Medical Company*, 961 F.2d 575, 578 (6th Cir.1992).

■ Plaintiff filed this cause of action against Defendant on May 20, 1998. Under Tenn.Code Ann. § 28–3–104(a)(3), all of Plaintiffs' claims which accrued prior to May 20, 1997 are time-barred by Tennessee's statute of limitations for federal civil rights actions. An action is deemed to have accrued "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991) (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984)). Plaintiffs became aware of Defendant's allegedly intrusive investigation into their background based on their 1994 burglary claim and its subsequent refusal to honor their claim well before May 20, 1997. Plaintiffs also were aware of Defendant's allegedly discriminatory refusal to honor their 1996 burglary claim well before May 20, 1997. Moreover, to the extent that Plaintiffs rely upon their 1987 and 1990 burglary claims as the bases for their allegations of discriminatory replacement value, all such claims are barred by the relevant statute of limitations.

Plaintiffs attempt to avoid the preclusive effect of Tennessee's statute of limitations by invoking the "continuing violations" doctrine.

Under the continuing violations doctrine, federal civil rights claims that are time-barred by the appropriate statute of limitations may still be actionable if the discriminatory acts are part of a continuing pattern of conduct. The Sixth Circuit recognizes two categories of continuing violation: 1) "where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation" and 2) "where there has been a long-standing and demonstrable policy of discrimination." *EEOC v. Penton Industrial Publishing Company, Inc.*, 851 F.2d 835, 838 (6th Cir.1988).

■ In the case at bar, Plaintiffs have sufficiently pled the continuing violations doctrine to avoid Tennessee's one-year statute of limitations for federal civil rights claims. Plaintiffs rely upon the second category of the continuing violations doctrine as their basis for avoiding the statute of limitations. To raise a timely allegation of a continuous violation under the second category, Plaintiffs must allege at least one specific discriminatory act which took place within the relevant statute of limitations. *Dixon* at 217 (6th Cir.1991). Plaintiffs fulfilled this requirement by alleging that Defendant discriminated against them because of their race [2] when it refused to renew their property insurance on May 20, 1997 and by alleging that such denial was part of a long-standing and continuous pattern of discriminatory conduct.[3]

The court will not dispose of what would otherwise be time-barred claims where Plaintiffs have sufficiently pled continuous violations with respect to the alleged discriminatory acts of the Defendant. Accordingly, the court denies Defendant's motion to dismiss as to Plaintiffs' claims under §§ 1981 and 1982.

### 3. Section 1985 and 1986 Claims

■ Plaintiffs allege that Defendant conspired with its agents, Jose Fant and Harry Howard, to deprive them of the equal protection of the laws and thereby violated Plaintiffs' rights under 42 U.S.C. § 1985. Section 1985 identifies three ways in which individuals may conspire to interfere with the civil rights of others. 42 U.S.C. § 1985 (1994). Under § 1985, it is unlawful for two or more individuals to 1) prevent a government official from performing his or her duties, 2) obstruct justice by intimidating a party, witness or juror, or 3) deprive persons of their rights and privileges. Although Plaintiffs' complaint did not specify which provision of § 1985 they rely upon for their action against Defendant, this court finds that § 1985(3) is the only provision applicable to the allegations raised by Plaintiff.

Section 1985(3) states in relevant part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if, one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for

---

**2.** Defendant's contention that Plaintiffs have not alleged intentional discrimination is clearly without merit. Among other claims, Plaintiffs allege that they were charged higher premiums than similarly situated white policyholders because of their race. These allegations distinguish the present case from *Harary v. Allstate Insurance Company*, 983 F.Supp. 95 (E.D.N.Y.1997).

**3.** Although Defendant argues that the interval of time between May 20, 1997 and May 20, 1998

exceeded one year, Plaintiffs clearly filed their suit within Tennessee's one-year statute of limitations. When computing time for an applicable statute of limitations, the day upon which the claim was filed should not be included within the computation. Fed.R.Civ.P. 6(a). When this adjustment is made, May 20, 1998, the day upon which Plaintiffs filed this lawsuit, proves to be exactly 365 days from the day on which the last alleged discriminatory act took place.

the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (1994).

To state a claim under § 1985, a plaintiff must allege the existence of a conspiracy. By the very terms of the statute, an action under § 1985(3) only applies where two or more persons have conspired to deprive an individual of the equal protection of the laws.

In the present case, Plaintiffs' complaint fails to allege facts supporting or inferring the existence of a conspiracy. Plaintiffs simply allege that Defendant conspired with its agents to mislead Plaintiffs into believing they would receive equal and fair treatment in premiums charged, claims handling procedures, and policy renewal. However, Plaintiffs' allegations run afoul of the intracorporate conspiracy theory, which has been adopted by the Sixth Circuit. *See e.g., Doherty v. American Motors Corporation,* 728 F.2d 334, 339 (6th Cir.1984); *Hull v. Cuyahoga Valley Joint Vocational School District Board of Education,* 926 F.2d 505, 509 (6th Cir.1991), *cert. denied, Hull v. Shuck,* 501 U.S. 1261, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991); *Castle v. Central Benefits Mut. Ins. Co.,* 940 F.2d 659, 1991 WL 147462, at *5 (6th Cir.1991). That theory states that "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Doherty* at 339 (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911 (5th Cir.1952)).

Notwithstanding the intracorporate theory, courts have adopted exceptions to this doctrine to avoid immunizing all private conspiracies where the actors coincidentally were employees of the same company. *Johnson v. Hills & Dales General Hospital,* 40 F.3d 837, 840 (6th Cir.1994), *cert. denied,* 514 U.S. 1066, 115 S.Ct. 1698, 131 L.Ed.2d 560 (1995). Under this exception, a corporation can con-

spire with its employees if those employees are acting outside the scope of their employment at the time of their collaboration with the corporation. *Id.* However, in the present case, Plaintiffs have failed to allege that Defendant's agents were acting outside the scope of their employment in conspiring to deprive Plaintiffs of the equal protection of the laws.[4] Quite to the contrary, Plaintiffs assert that the discriminatory acts committed against them were part of Defendant's longstanding policy and that Defendant conspired with its own agents to enforce that policy. Plaintiffs' complaint also does not allege that Defendant acted in concert with any other individual or corporation in depriving Plaintiffs of any rights or privileges. These failures in Plaintiffs' allegations render them incapable of stating a claim under § 1985.

Plaintiffs' § 1986 claim must also be dismissed because that section merely creates liability for "those who aid and abet violations of § 1985." *Browder v. Tipton,* 630 F.2d 1149, 1155 (6th Cir.1980). Since Plaintiffs cannot sufficiently allege a claim under § 1985 for which relief can be granted, they certainly cannot state a claim under § 1986 for aiding and abetting violations of § 1985. *Id.*

4. Section 1988 Claim

■ Plaintiffs have requested attorney's fees pursuant to 42 U.S.C. § 1988. The purpose of this statute is to guarantee " 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Pursuant to this purpose, § 1988 authorizes a court to grant a reasonable attorney's fee to the prevailing party in an action to enforce 42 U.S.C. §§ 1981, 1981a, 1982, 1983, 1985, and 1986. Plaintiffs' request for an attorney's fee under § 1988 is premature because such relief can be granted only after a plaintiff has succeed-

---

4. At the January 8, 1999 oral argument granted by the court per Defendant's request, Plaintiffs argued that their complaint fell within the exception to the intracorporate conspiracy doctrine because acts of racial discrimination are by definition outside the scope of employment. The concept of acting "within scope of employment" in the context of a conspiracy allegation assists courts in distinguishing "between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Hills & Dales General Hospital* at 840. The mere fact that an activity is illegal or inappropriate does not, without more, render that activity outside the scope of employment.

ed on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Sutton v. Cleveland Board of Education*, 958 F.2d 1339, 1352 (6th Cir.1992) (quoting *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 789, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). At this point in the litigation, Plaintiffs have not satisfied this threshold and thus are incapable of recovering an attorney's fee until they have received at least some relief on the merits of their claims.

### 5. RICO Claim

Plaintiffs allege that Defendant violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 by deriving income from its agents' fraudulent and misleading practices in the sales of insurance policies to Plaintiffs and other African–Americans. Plaintiffs allege that Defendant committed mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 as the predicate acts necessary to invoke RICO. Plaintiffs' allegations fail to specify with any particularity which subsection of 18 U.S.C. § 1962 they rely upon to assert their cause of action under RICO. Although Defendant has noted case law from other jurisdictions suggesting that this failure constitutes valid grounds for dismissal of a claim, the court has found no comparable authority in the Sixth Circuit. Under Rule 8 of the Federal Rules of Civil Procedure, "[n]o technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e)(1). In light of this liberal pleading requirement, the court is loathe to dismiss Plaintiffs' claims due to a technical deficiency and therefore will proceed to analyze Plaintiffs' RICO claims on the merits.

RICO prohibits the following activities:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

· · · · ·

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962 (1984).

To facilitate the enforcement of its provisions, RICO creates a private cause of action for those who have been injured in their businesses or properties by a violation of § 1962. 18 U.S.C. § 1964(c).

■ Defendant argues that under the McCarran–Ferguson Act, 15 U.S.C. § 1012, Plaintiffs' claims under RICO are preempted by Tennessee statutes regulating the insurance industry. The McCarran–Ferguson Act prohibits any act of Congress which is not specifically related to the business of insurance from being construed to invalidate, impair or supercede any law enacted by a state to regulate the business of insurance. 18 U.S.C. § 1012(b). Since it is clear that RICO does not specifically relate to the business of insurance, the court must answer two initial questions: 1) whether the conduct by the insurance company in this case constitutes the business of insurance 2) whether the conduct is regulated by Tennessee insurance law. *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 391 (6th Cir.1996). There is no question that Defendant is engaged in the business of insurance. There is also no question that the TITPA and Tennessee's

bad faith statute, Tenn.Code Ann. § 56–7–105, regulate the state's insurance industry.

The remaining inquiry is whether a RICO civil action would invalidate, impair or supercede Tennessee's laws governing insurance. To be preempted by state law under the McCarran–Ferguson Act, a cause of action must do more than simply provide additional procedural measures. *Nationwide Mut. Ins. Co.* at 1363. The Sixth Circuit's decision in *Kenty* provides guidance for this court's inquiry. In *Kenty,* the court found that a RICO action would invalidate Ohio's insurance laws where the state's standards of liability and proof differed from that of RICO. *Kenty* at 392. The court noted that Ohio had enacted legislation providing detailed regulation and remedies for unfair and deceptive acts in the insurance industry. *Id.* Unlike RICO, Ohio's insurance laws did not make any provisions for treble damages. *Id.* Moreover, the court found that Ohio may use different standards than RICO when determining whether a misrepresentation violates its insurance laws. *Id.* Accordingly, the court held that the RICO claim was preempted by Ohio's insurance laws under the McCarran–Ferguson Act. *Id.*

Under *Kenty,* allowing a RICO civil action in the present case would also impair or supercede Tennessee's laws regulating the insurance industry. Like Ohio's insurance laws, TITPA provides detailed regulation of unfair and deceptive acts in the insurance industry. Tenn.Code Ann. § 56–8–104. Tennessee's insurance laws also grant the State Commissioner of Insurance and Commerce broad investigatory and enforcement powers including the authority to "examine and investigate into the affairs of every person engaged in the business of insurance in this state in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by § 56–8–103." Tenn.Code Ann. § 56–8–107. The TITPA does not create a private cause of action to enforce its provisions, *Myint v. Allstate Insurance Company,* 970 S.W.2d 920, 924 (Tenn.1998), nor does it authorize treble damages for violations. Quite to the contrary, the TITPA establishes a statutory maximum of $50,000 for the aggregate penalties which can be imposed by the Commissioner for multiple violations of the TITPA within any six-month period. Tenn.Code Ann. § 56–8–109(a)(1). Just as Ohio may employ a different standard than that used in RICO actions in determining whether a misrepresentation violates its insurance law, Tennessee may also adopt a different standard than the one under RICO to determine if a misrepresentation violates the ITPA. In short, this court finds sufficient similarities in Ohio's and Tennessee's insurance laws to reach the conclusion that the Plaintiffs' RICO claim should be handled in the same manner that the Sixth Circuit handled plaintiffs' RICO claim in *Kenty.*

Based on the foregoing, this court holds that Plaintiffs' claims under RICO are preempted by Tennessee's state laws governing insurance and therefore must be dismissed under the McCarran–Ferguson Act. Even if these claims were not preempted under the McCarran–Ferguson Act, Plaintiffs' § 1962(a) and § 1962(c) claims would fail for the following reasons:

### a. § 1962(a)

Plaintiffs have not sufficiently plead a cause of action under § 1962(a). To allege a violation of § 1962(a), a plaintiff must allege injuries stemming directly from the defendant's alleged use or investment of the illegally obtained income. *Craighead v. E.F. Hutton & Company, Inc.,* 899 F.2d 485, 494 (6th Cir.1990). This injury must be separate from that suffered from the underlying predicate acts. *Id.* Although Plaintiffs have alleged that they were injured by the discriminatory and fraudulent actions of Defendant's agents, Fant and Howard, Plaintiffs have not alleged how they were injured in their business or property by Defendant's use of the alleged illegally obtained income. Plaintiffs have not alleged any injuries separate from those suffered because of the alleged fraudulent sales of insurance policies by Defendant's agents. Plaintiffs are simply complaining of injuries suffered from the allegedly fraudulent predicate acts, not the subsequent reinvestment of the proceeds derived from those acts. Accordingly, to the

extent that Plaintiffs attempt to assert a cause of action under § 1962(a), any such cause of action must be dismissed for failure to state a claim.

### b. § 1962(c)

■ To allege a violation of § 1962(c), a plaintiff must demonstrate that the person who is employed by or associated with the enterprise is a separate entity from the enterprise with which he is employed or associated. *Puckett v. Tennessee Eastman Company*, 889 F.2d 1481, 1489 (6th Cir.1989). Plaintiffs' complaint fails to identify the separate entities which properly constitute a person and enterprise for purposes of § 1962(c). The court notes that Plaintiffs' distinction between the Defendants and its agents might be an attempt to identify the agents as separate entities from the Defendant. However, this distinction will not stand under *Puckett*. Unless Plaintiffs can show that the agents were acting outside the scope of their employment with Defendant, the agents and Defendant constitute the same entity and therefore cannot satisfy the pleading requirements under § 1962(c). *Id.* Not only does Plaintiffs' complaint fail to allege that the agents acted outside the scope of their employment, Plaintiffs repeatedly assert that the Defendant's agents acted in accordance with long-standing company policies and practices. The essence of Plaintiffs' complaint is that Defendant's insurance agents harmed them by effectuating Defendant's discriminatory policies. Where Plaintiffs have failed to allege that Defendant and its agents were separate entities, their claim must fail for deficiency in pleading. To the extent that Plaintiffs assert a claim under § 1962(c), any such claim must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 6. Tennessee Insurance Trade Practices Act Claim

■ Plaintiffs allege that Defendant violated TITPA by its discriminatory actions against African–Americans. Under *Myint*, no private right of action exists under any of the TITPA's provisions. *Myint* at 924. Rather, the Commissioner of Commerce and Insurance is given broad authority to enforce the provisions of the TITPA. Accordingly, Plaintiffs' claims under TITPA. must fail for lack of standing.

Plaintiffs contend that Tenn.Code Ann. § 56–8–104(8), the provision of the TITPA which grants the Commissioner of Commerce and Insurance exclusive enforcement authority, is limited in scope to unfair claim settlement practices. Plaintiffs further contend that since the exclusive enforcement authority provision is limited to unfair claim settlement practices, nothing in the TITPA bars a private right of action to enforce those provisions of the statute prohibiting false information and advertising. The question of whether Plaintiffs' construction of Tenn.Code Ann. § 56–8–104(8) is a reasonable one is beyond the jurisdiction of this court. State supreme courts are the ultimate interpreters of state law. *West v. A.T. & T. Co.*, 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940). In *Myint*, the Tennessee Supreme Court clearly declared that no private right of action "may be maintained under the Act [TITPA]." *Myint* at 924. Accordingly, this court has no choice but to dismiss Plaintiffs' claims under the TITPA for failure to state a claim.

### 7. Tennessee Consumer Protection Act Claim

Plaintiffs allege that Defendant's discriminatory practices violated the TCPA. The TCPA creates a private cause of action for those who suffer a monetary or property loss as the result of any unfair or deceptive act prohibited by its provisions. Tenn.Code Ann. § 47–18–109. However, all private actions under the TCPA "shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47–18–109 be brought more than four (4) years after the date of the consumer transaction giving rise to the claim for relief." Tenn.Code Ann. § 47–18–110. Defendant argues that Plaintiffs' TCPA claims should be time-barred to the extent that Plaintiffs' allegations arise from the purchase of its insurance policies. In support of this argument, Defendant notes that Plaintiffs' complaint avers that the insurance policies in question were purchased

from the Defendant in 1971, 1976, and 1987, well beyond the one-year statute of limitations for actions brought under the TCPA.

 Although Plaintiffs' TCPA claims are subject to the one-year statute of limitation, Tennessee law allows statutes of limitations to be tolled for a period of time where the defendant has taken actions that were fraudulent or intended to conceal a plaintiff's cause of action. *Bernard v. Houston Ezell Corporation*, 968 S.W.2d 855, 858 (Tenn.Ct. App.1997). To invoke tolling of the statute of limitations on the basis of fraudulent concealment, Plaintiffs must show more than mere ignorance or failure to discover the existence of a cause of action. *Vance v. Schulder*, 547 S.W.2d 927, 930 (Tenn.1977). Plaintiffs must demonstrate that there was a continued affirmative, fraudulent concealment of the cause of action by Defendant. *Bernard* at 860. In addition, Plaintiffs must show that Defendant knew that they had a cause of action and concealed it in a manner which prevented the Plaintiffs from discovering it despite their diligence. *Id.* In the present case, Plaintiffs have not alleged that Defendant knew of their cause of action or that they took affirmative steps to conceal that cause of action. Plaintiffs merely allege that they did not discover Defendant's misrepresentations concerning its insurance policy. These allegations, without more, are insufficient to warrant tolling the statute of limitations. *Id.* (stating "[t]he fact that plaintiffs did not discover a fraud does not itself toll the statute of limitations."). To invoke fraudulent concealment, Plaintiffs must not only allege the underlying fraud, but also that Defendant knowingly took additional steps to prevent Plaintiffs from ever bringing the underlying claim. Absent such allegations, all of Plaintiffs' TCPA claims that accrued before May 20, 1997 are time-barred.

 Plaintiffs also assert that the one-year statute of limitations should not apply where Defendant's unfair and deceptive practices are continuing in nature. This argument is also without merit. At oral argument, Plaintiffs clearly averred that they discovered Defendant's fraudulent and misleading insurance practices in 1996. Under Tenn.Code Ann. § 47–18–109, a private cause of action to enforce the TCPA must be brought "within one year from a person's discovery of the unlawful act or practice." Since Plaintiffs filed their claims on May 20, 1998, all of their claims under the TCPA are barred by the one-year statute of limitations. Where Plaintiffs admit that they discovered the nature of their injury nearly two years before they filed suit against Defendant, the court cannot allow Plaintiffs to avoid the operation of the statute of limitations simply by alleging that the wrongdoing was continuous in nature. To do otherwise would eviscerate the policies served by statutes of limitations and create the anomalous result of allowing a plaintiff to knowingly retain a viable cause of action indefinitely so long as the defendant continued to engage in the alleged unlawful conduct. Once Plaintiffs became aware of Defendant's fraudulent practices, their TCPA action accrued and the one-year statute of limitations began to run.

### 8. Tennessee Human Rights Act Claim

#### a. Tenn.Code Ann. § 4–21–501

In their complaint, Plaintiffs asserted that Defendant violated their rights under § 4–21–501 of the THRA. At oral argument, Plaintiffs indicated that they had mistakenly cited Tenn.Code Ann. § 4–21–501 and had no intention of pursuing any cause of action under that provision of the THRA. Based on Plaintiffs' assertion, the court dismisses all claims under § 4–21–501 alleged in the Plaintiffs' complaint.

#### b. Tenn.Code Ann. § 4–21–601

Plaintiffs assert that Defendant violated their rights § 4–21–601 of the THRA, Tenn. Code Ann. § 4–21–101 et seq., by discriminating in the provision of property insurance to Plaintiffs and other African–Americans. Plaintiffs rely upon the provisions of Tenn. Code Ann. § 4–21–601 which states in relevant part:

> It is a discriminatory practice for a person in the business of insuring against hazards to refuse to enter into, or *discriminate in the terms, conditions, or privileges of, a contract of insurance against hazards to a housing accommodation or real proper-*

*ty* because of the race, color, creed, religion, sex or national origin of the person owning, or residing in or near the housing accommodations or real property.

Tenn.Code Ann. § 4–21–601(c) (emphasis added).

Plaintiffs allege that Defendant discriminated against them on the basis of their race in the provision of property insurance by charging excessive premiums and employing different renewal standards for African–Americans. Plaintiffs' claims fall squarely within the provisions of Tenn.Code Ann. § 4–21–601(c). Section 4–21–601(e) of the THRA authorizes private litigants to bring civil actions to enforce the provisions of § 4–21–601. To the degree that Defendant challenges the sufficiency of Plaintiffs' claims under Tenn. Code Ann. § 4–21–601, the court rejects such challenge and finds that Plaintiffs have filed an appropriate and timely claim.

### 9. Contract Law Claim

Plaintiffs also assert that Defendant defrauded them in the formation of insurance contracts in 1971, 1976 and 1987 by misleading Plaintiffs into thinking they were purchasing a nondiscriminatory property insurance policies. Under Tenn.Code Ann. § 28–3–109(a)(3), all contract actions not otherwise expressly provided for must be brought within six years after a cause of action has accrued. Defendant contends that Plaintiff's contract claims are time-barred under Tenn. Code Ann. § 28–3–109(a)(3) because Plaintiffs' contract claims were filed on May 20, 1998, more than six years from the formation of the contracts in question. Plaintiffs attempt to avoid the statute of limitations by arguing that every renewal of the property insurance policy constituted a separate contract.

The court finds some merit in Plaintiffs' contentions. Although a renewal of an insurance contract may be routine and require very little negotiation, a renewal does contain the essential elements of a contract: offer, acceptance and consideration. If the last renewal on the canceled policy took place within six years of May 20, 1998, the date on which Plaintiffs filed their suit against the Defendant, then the cause of action may be within the statute of limitations. Moreover, Plaintiffs' contractual allegations are not limited to the premiums paid on the policy which was canceled on May 20, 1997, but extend to a policy currently in effect. Because Defendant's attack on Plaintiffs' claims comes in the context of a motion to dismiss, this court must construe Plaintiffs' complaint liberally and construe all factual inferences in their favor. In light of this standard, the court is not prepared to dismiss Plaintiffs' contractual allegations based on the statute of limitations where there is the possibility that Plaintiffs can avoid the time bar. To do otherwise would create the risk of prematurely terminating Plaintiffs' claims.

### IV. ORDER

Based on the foregoing, Defendant's motion to dismiss under Rules 12(b)(1) and 12(b)(6) as to Plaintiffs' claims under 42 U.S.C. §§ 1985, 1986 and 1988, RICO, TITPA, TCPA, and Tenn.Code Ann. § 4–21–501 is **GRANTED**. As to Plaintiffs' FHA, 42 U.S.C. §§ 1981 and 1982, Tenn.Code Ann. § 4–21–601 and common law contract claims, Defendant's motion to dismiss under Rules 12(b)(1) and 12(b)(6) is **DENIED**.